[S. F. No. 14162. In Bank.—January 20, 1933.]

MAJESTIC ELECTRIC DEVELOPMENT COMPANY (a Corporation), Respondent, v. JOHN H. RICE et al., Appellants.

Samuel T. Bush, Bertram H. Ross, James Wallace Hughes and August B. Rothschild for Appellants.

Harry G. McKannay and Richard Fitzpatrick for Respondent.

THE COURT.—This is an action for breach of contract and for an accounting. The complaint also contains counts for conversion and money had and received.

Plaintiff, herein called the Development Company, in exchange for certain assets, was to receive 50,000 shares of the stock of Majestic Electric Appliance Company, herein called the Appliance Company. The corporation commissioner, however, ordered that 25,000 of such shares be withheld until the Appliance Company should sell 50,000 additional shares to the public at $10 per share. Thereupon, in May, 1923, A. T. Burch, who was an officer and director of plaintiff Development Company, and owned eighty per cent of its stock, entered into a contract with defendants, who were partners engaged in selling securities. The object of this contract was to have defendants undertake with the Appliance Company to sell the required 50,000 additional shares, in order that plaintiff might receive its balance of 25,000 shares. Under the Burch contract defendants were to receive from him twenty per cent of the selling price of the stock sold, payable in shares. Defendants sold the 50,000 shares, and thereby became entitled to 10,000 shares as compensation. Plaintiff Development Company became entitled to receive its balance of 25,000 shares, and did in December, 1923, secure a release from escrow of 18,706 of said shares. Burch explained his activities to the directors

of plaintiff Development Company on December 5, 1923, seeking to have them ratify his contract. Plaintiff, however, refused to deliver the 10,000 shares to satisfy Burch's obligation, and after some negotiations, a new contract was entered into on February 13, 1924, between plaintiff and defendants. It is this contract which is the basis of the present action. Under its terms, 5,000 shares, recited to be the property of plaintiff, were delivered to defendants as "an advance payment of commissions" for the sale of a further 25,000 shares of Appliance Company stock. It further provides that should the defendants fail "to complete the program" of selling 25,000 shares "unless prevented from so doing by court action or by action of the Commissioner of Corporations", the 5,000 shares or the proper proportion thereof are to be returned.

At this time, defendants had on hand orders for the purchase of 3,969 shares, which had been taken by them from November, 1923, to February 14, 1924, and these orders were filled from the 5,000 shares delivered under the new contract, and the money was retained by defendants.

Subsequent to that date, and up to May 6, 1924, defendants sold only 210 shares of the 5,000 commission shares, and 160 shares of the 25,000 to be sold for plaintiff. The value of the stock declined and no further sales were made. Defendants still had 824 shares remaining out of the 5,000 and 23,840 remaining out of the 25,000. On December 1, 1924, the corporation commissioner suspended the permit, and on February 27, 1925, revoked the same.

Some time in 1927 plaintiff made demand on defendants for an accounting, and upon defendants' refusal, filed this suit. Defendants admitted the sale of 3,969 shares for a gross price of $39,690, but alleged expenses totaling $23,628.93, and also filed a cross-complaint alleging that they were entitled to the 5,000 shares and to 5,000 additional shares by virtue of the Burch contract. The trial court found for plaintiff and against defendants on all the important issues, and gave judgment in favor of plaintiff for $39,690 with interest from June 1, 1924.

Defendants make several points in their appeal, none of which is, in view of the conflict in the evidence, sufficient to warrant a reversal. Their principal contention is that the contract sued upon permitted them to retain

the 5,000 shares as their own in the event they were prevented from selling the 25,000 shares by action of the corporation commissioner, and that such prevention actually occurred. Assuming that the contract is to be so interpreted, the testimony of defendant Greisen nevertheless shows that some months prior to the suspension of the permit defendants had stopped selling and had informed the officers of plaintiff that it was impossible to sell the shares at that time. Difficulties under which the corporation was laboring were said to be the cause. This was in May, 1924, and the permit was not suspended until December, 1924. For approximately six months no shares were sold. The trial court was certainly justified in finding that the action of the corporation commissioner was not the cause of defendants' failure to perform, and hence the conclusion follows that defendants were not entitled to the 5,000 shares under the terms of the contract.

Defendants also contend that the Burch contract was ratified by the directors of plaintiff. Burch so testified, but the minutes of the meeting contain no such recital and the court undoubtedly questioned Burch's credibility in finding against defendants on this point. Moreover, the execution of the new contract with the plaintiff, which contract stipulated that the 5,000 shares delivered were the property of plaintiff, hardly seems consistent with an admission of liability to defendants for 10,000 shares under the Burch contract.

The court refused to give any credit to defendants for expenses incurred in the sale of the 3,969 shares, finding that the 5,000 shares were obtained by fraud, the defendants never having intended to perform their contract. In view of defendants' conduct in immediately filling past orders, retaining the money, and abruptly ceasing further sales upon various not altogether consistent explanations, we cannot say that the record fails to justify such a finding.

The judgment is affirmed.